# In the United States Court of Federal Claims

No. 20-1791V
Filed: June 26, 2023
Re-Issued: September 20, 2023[1]

_____

JULIETTE LEVY, on behalf of her
minor child, J.L.,

       *Petitioner*,

 v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

       *Respondent*.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Andrew D. Downing*, Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner.

*Voris E. Johnson, Jr.*, Senior Trial Attorney, United States Department of Justice, Civil Division, Torts Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *C. Salvatore D'Alessio*, Director, *Heather L. Pearlman*, Deputy Director, and *Darryl R. Wishard*, Assistant Director, for the Respondent.

## OPINION AND ORDER

**MEYERS, Judge**.

   This case is one of many that Petitioner's counsel has brought on behalf of people claiming that the Gardasil vaccine caused them harm. Petitioner has two motions pending before the Court—one seeking the disqualification of the Chief Special Master in every pending case Petitioner's counsel has on behalf of a person claiming injury from the Gardasil vaccine, and one seeking review of the Chief Special Master's denial of attorney's fees in this case. In the disqualification motion, Petitioner asserts repeatedly that the Chief Special Master is biased against all Gardasil claims, but provides little, if any, support for her numerous assertions. This

---

[1] Pursuant to Vaccine Rule 18(b), the Court initially filed this opinion under seal and afforded the parties an opportunity to notify the court of any information that should be redacted from the opinion for reasons of privilege or confidentiality. Because the parties did not propose any redactions, the Court reissues this opinion in its original form for public availability.

falls well short of meeting the heavy burden of demonstrating bias sufficient to justify disqualification.

In her motion for review, Petitioner contends that the Chief Special Master erred by refusing to consider affidavit evidence of her child's vaccination and improperly denied fees due to her failure to provide the vaccination records for her child's vaccination that allegedly caused the injury in this case. In the end, the Vaccine Act makes short work of Petitioner's motion for review. The Vaccine Act clearly required Petitioner to provide the vaccination records for her child's vaccination that Petitioner alleges caused his injury. If those records were unavailable (it does not appear they were), the Vaccine Act required Petitioner to explain their unavailability and this Court's Rules required her to explain what she has done to try and get those records. Petitioner refused to do either. It was, therefore, not an abuse of discretion to deny fees to counsel that refused to comply with the Vaccine Act's clear documentation requirements and then argued the statutory requirements did not exist. Therefore, the Court denies both of Petitioner's motions.

I.    **Background[2]**

On December 7, 2020, Petitioner filed a Gardasil vaccine injury petition on behalf of her minor child, J.L. ECF No. 1. The petition states that "Petitioners are statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly." ECF No. 1 at 1. Petitioner did not provide any supporting evidence with her petition other than a sworn statement in which she alleged J.L.'s vaccinations and medical issues she claimed resulted from those vaccinations. Pet. Ex. 1 (ECF No. 1-2).

On December 8, 2020, the Chief Special Master issued a pre-assignment review or "PAR" order. ECF No. 5. "[T]he objective of PAR is to process petitions more efficiently by ensuring that cases are not assigned to a special master or the Special Processing Unit ('SPU') until the record is deemed substantially complete and ready for medical review by HHS personnel." *Id.* at 1. Therefore, the PAR order explains that "[t]he Vaccine Act includes the statutory requirement that each Petitioner's initial submissions, including the petition and the supporting documents, will contain the Petitioner's case-in-chief. Section 11(c) of the Vaccine Act requires that each petition be filed with supporting documentation." *Id.* at 1 (internal citation omitted). The PAR order also explains that:

> The Vaccine Act and the Vaccine Rules require, at a minimum, that the petition must be supported by all medical and related records potentially relevant to the issue of whether Petitioner is entitled to an award. The necessary records and affidavits are further described in Vaccine Rule 2(c) and the Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines"). Detailed guidance regarding the filing of these documents can also be found in the Guidelines.

---

[2] The Court does not recite J.L.'s medical history because the resolution of these motions does not turn on that history.

2

*Id*. at 2 (internal footnote omitted).  The PAR order also explains that Petitioner must include "Vaccination record(s)."  *Id*. at 3.  Finally, the PAR order provides that "any required records which are unavailable must be identified and the reason for their unavailability must be explained in an affidavit."  *Id*. (citing 42 U.S.C. § 11(c)(3) & Vaccine Rule 2(c)(2)(B)(i)).

Petitioner filed some medical records on December 8, 2020.  ECF No. 6.  After several unopposed extensions of time to provide additional medical records, *see* ECF Nos. 7-10, Petitioner filed additional medical records on April 20, 2021.  ECF No. 11.  The next day she filed a PAR Medical History Questionnaire, which again informed Petitioner that she must file "[y]our vaccination record."  ECF No. 12 at 1.  Petitioner did not respond to the request for "[t]he pharmacy, medical facility, or other location (i.e. workplace, health fair, church, etc.) where you received the vaccination in question."  *Id*. at 1-2.  Rather, Petitioner identified the medical facilities where J.L. received treatment after Petitioner asserts he received the Gardasil vaccinations.  *Id*. at 2.

Also on April 21, 2021, Petitioner filed a Statement of Completion.  ECF No. 13.  This Statement makes two representations.  First, "Petitioner's counsel has received medical records from all outstanding medical providers and has filed all known records.  The undersigned hereby certifies that all relevant medical records have been received and filed of record in this case."  *Id*. at 1 (footnote omitted).  Second, the Statement provides that "[a]ll historical medical records have been filed.  However, treatment of J.L. is ongoing.  Counsel will file supplemental medical records as they become available."  *Id*. at 1 n.1.

The Chief Special Master issued a 240-day Formal Notice on August 4, 2021.  ECF No. 14.  Under the Vaccine Act, the Petitioner may withdraw from the Vaccine Injury Compensation Program if the special master has not issued a decision within 240 days.  42 U.S.C. § 300aa-21(b).  Petitioner elected to withdraw her petition and pursue litigation against Gardasil's manufacturer in district court.[3]  ECF No. 15.  Pursuant to the Petitioner's election to withdraw her petition, the Chief Special Master issued an order concluding proceedings.  ECF No. 16.

On September 9, 2021, Petitioner filed a Motion for Final Attorneys' Fees and Costs.  ECF No. 18.  The Chief Special Master denied the motion on February 9, 2023, stating "while I find there was good faith for Petitioner's claim, I also find that Petitioner's claim lacked reasonable basis and, therefore, is not entitled to an award of attorney's fees and costs."  ECF No. 28 at 2.  Petitioner filed a Motion for Review, ECF Nos. 29 & 30, and a Motion to Disqualify the Chief Special Master "from all Gardasil cases now pending and filed in the future" due to the Chief Special Master's alleged bias against petitioners who allege injury due to a Gardasil vaccination.  ECF No. 33 at 10.

---

[3] Petitioner's counsel has filed over 100 cases against Merck regarding Gardasil in district court that are now part of a multidistrict litigation.  ECF No. 33 at 4-5; *see also Fetters v. Sec'y of Health & Hum. Servs.*, No. 21-928V, 2023 WL 3597513, at *2 (Fed. Cl. May 23, 2023); *Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413, 2022 WL 17587757 (Fed. Cl. Spec. Mstr. Oct. 18, 2022).

3

**II.     Petitioner fails to carry her burden to overcome the presumption of the Chief Special Master's impartiality.**

### A.     Standard of Review.

A special master "shall disqualify himself in any proceeding in which his impartiality might *reasonably* be questioned."  28 U.S.C. § 455(a) (emphasis added); ECF No. 33 at 9.  At the outset, the Court recognizes that by its terms § 455 does not apply to the Chief Special Master because it only applies to "[a]ny justice, judge, or magistrate judge of the United States." 28 U.S.C. § 455(a).  The Court will apply Section 455 here, however, because the Office of Special Masters and the Chief Special Master himself have applied Section 455 to evaluate recusal motions in the past.  *E.g.*, *Schultz v. Sec'y of Health & Hum. Servs.*, No. 16-539V, 2019 WL 6359139, at *3 & n.7 (Fed. Cl. Oct. 9, 2019)[4]; *Earles ex rel. Earles v. Sec'y of Health & Hum. Servs.*, No. 10-34V, 2011 WL 2006823, at *1 (Fed. Cl. Apr. 20, 2011); *see also Fetters*, 2023 WL 3597513 at *4.  They have done so because no statute or rule specifically governs special master recusal, meaning that Vaccine Rule 1(b) allows the Court to rely on Section 455 standards to evaluate a disqualification motion.  Vaccine Rule 1(b) provides: "In any matter not specifically addressed by the Vaccine Rules, the special master or the court may regulate the applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently."  Consistent with Vaccine Rule 1(b) and the Chief Special Master's and the Office of Special Master's prior reliance on § 455 to address disqualification issues, the Court applies § 455's standards here as well.

Under § 455, courts apply "an objective standard of reasonableness in determining whether recusal is required."  *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003).  Therefore, a special master must disqualify himself if "a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown."  *Id.* (citing *U.S. v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996)).  "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992).

### B.     Discussion

Petitioner moves this Court to disqualify the Chief Special Master "from all Gardasil cases now pending and filed in the future."  ECF No. 33 at 10.  Although Petitioner raises multiple arguments for disqualification, she fails to carry her burden to demonstrate any appearance of bias or conduct coming close to that required to disqualify the Chief Special Master.

*First*, Petitioner alleges that the Chief Special Master "has no expertise, training, or any experience at all that would allow him to disregard peer-reviewed, published medical literature in

---

[4] The Court notes that Petitioner's counsel here was also the petitioner's counsel in *Schultz* and appeared to file that motion for recusal based on his displeasure with the Chief Special Master's ruling on a motion.  *Schultz v. Sec'y of Health & Hum. Servs.*, No. 16-539V, 2019 WL 6359139, at *3-6 (Fed. Cl. Oct. 9, 2019).

favor of his own biased opinions pertaining to vaccine causation." ECF No. 33 at 2. Similarly, Petitioner asserts that "[t]he Chief Special Master has already and repeatedly shown that he has no intention of deciding **ANY** Gardasil case on the facts of th[e] particular case, but instead intends to use misunderstood, outdated, and erroneous facts and information the Chief Special Master may have picked up from other cases to decide the merit and reliability of the instant case and others." *Id*. at 10 (emphasis in original). When a party makes accusations like that, the Court expects that party to provide some support for it. But Petitioner does not provide even a scintilla of support for her accusation—there is not a single citation to an allegedly offending decision or anything else to back up the accusations. Presumably, Petitioner expects this Court to accept her word for it and order disqualification based solely on that basis. Such argument, however, falls well short of the heavy burden required to establish an objective appearance of bias sufficient to justify disqualification. *Pope*, 974 F.2d at 985 ("A party introducing a motion to recuse carries a heavy burden of proof.").

Nor does the behavior Petitioner alleges comport with this Court's experience with the Chief Special Master's handling of Gardasil cases. As the Government counters, this Court has affirmed each of the OSM's decisions denying Gardasil petitioners' claims that the vaccine caused an autonomic disfunction, typically postural orthostatic tachycardia syndrome or "POTS." ECF No. 34 at 2-5. Indeed, the undersigned's last Vaccine Act decision dealt with a claim that Gardasil caused POTS, which the Chief Special Master denied. *See J.S. v. Sec'y of Health & Hum. Servs.*, 164 Fed. Cl. 314 (2023), *redacted opinion issued*, No. 16-1083V, 2023 WL 1956306 (Fed. Cl. Feb. 13, 2023), *appeal docketed*, No. 23-1644 (Fed. Cir. Mar. 22, 2023). In *J.S.*, "the Chief Special Master described in detail repeated instances where physicians evaluated Petitioner, expressed the opinion that her symptoms were likely psychological in nature and related to anxiety, and failed to identify an underlying physiological condition." *Id*. at 337. In other words, the Chief Special Master did not "discard" anything in *J.S.* To the contrary, he considered the entirety of the medical record in detail and relied on the record before him to reach his decision. *See id*. at 336-40 (discussing the Chief Special Master's analyses of the record). While the Chief Special Master went further to note that the Petitioner's theory that Gardasil can cause POTS was unpersuasive, he did not do so by "disregarding" anything. He considered the competing expert reports and found the Government's experts more persuasive. *Id*. at 340-43. That is what special masters do and their decisions are entitled to deference.

And the Chief Special Master is not alone. Multiple special masters have denied Gardasil claims alleging autonomic injury (typically POTS) that have either not been appealed or affirmed by this Court:

- *C.F. v. Sec'y of Health & Hum. Servs.*, No. 15-731V, 2023 WL 2198809 (Fed. Cl. Spec. Mstr. Jan. 20, 2023) (Horner, S.M.).

- *America v. Sec'y of Health & Hum. Servs.*, No. 17-542V, 2022 WL 278151 (Fed. Cl. Spec. Mstr. Jan. 4, 2022) (Corcoran, C.S.M.).

- *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 839092 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) (Corcoran, C.S.M.), *aff'd*, 154 Fed. Cl. 640 (2021) (Bruggink, S.J.).

- *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620 (Fed. Cl. Spec. Mstr. Nov. 13, 2020) (Corcoran, C.S.M.), *aff'd*, 154 Fed. Cl. 149 (2021) (Griggsby, J.).

- *Balasco v. Sec'y of Health & Hum. Servs.*, No. 17-215V, 2020 WL 1240917 (Fed. Cl. Spec. Mstr. Feb. 14, 2020) (Corcoran, C.S.M.).

- *Johnson v. Sec'y of Health & Hum. Servs.*, No. 14-254V, 2018 WL 2051760 (Fed. Cl. Spec. Mstr. Mar. 23, 2018) (Corcoran, C.S.M.).

- *Combs v. Sec'y of Health & Hum. Servs.*, No. 14-878V, 2018 WL 1581672 (Fed. Cl. Spec. Mstr. Feb. 15, 2018) (Corcoran, C.S.M.).

- *K.L. v. Sec'y of Health & Hum. Servs.*, No. 12-312V, 2017 WL 1713110 (Fed. Cl. Spec. Mstr. Mar. 17, 2017) (Corcoran, C.S.M.), *aff'd*, 134 Fed. Cl. 579 (2017) (Horn, J.).

- *L.A.M. v. Sec'y of Health & Hum. Servs.*, No. 11-852V, 2017 WL 527576 (Fed. Cl. Spec. Mstr. Jan. 31, 2017) (Millman, S.M.).

- *Turkupolis v. Sec'y of Health & Hum. Servs.*, No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014) (Millman, S.M.).

ECF No. 34 at 2-5 (discussing cases). In reply, Petitioner merely disregards these cases because they "are the heart of the problem." ECF No. 36 at 1. That reply is somewhat lacking. It is hard to see how the decisions of other special masters denying Gardasil claims and this Court's affirmance of those decisions reflect the purported bias of the Chief Special Master. Rather, this record of special masters and judges reaching the same conclusions and/or affirming the Chief Special Master's conclusions about Gardasil claims undermines Petitioner's argument that the Chief Special Master is deciding cases based on personal bias rather than the record before him.

*Second*, Petitioner contends that the Chief Special Master lacks any expertise in Gardasil cases because he "has never practiced in the area of products liability" and "prior to becom[ing] a Special Master, he was a tax lawyer for the Department of Justice." ECF No. 33 at 2. The Government disagrees and observes that "through handling many past cases alleging autonomic dysfunction caused by Gardasil, the Chief Special Master has heard from numerous experts for both parties and is very familiar with the medical literature the petitioners rely upon in these cases." ECF No. 34 at 5. The Government points out that the Chief Special Master's "body of reasoned decisions belies that argument," given that "the Court has affirmed his decisions in *four* prior Gardasil/autonomic dysfunction cases." ECF No. 34 at 5-6. Indeed, the Chief Special Master has participated in Vaccine Act cases for years, and, as Petitioner acknowledges, is handling or has handled "over one hundred" Gardasil cases as a special master. ECF No. 33 at 9-10.

*Third*, Petitioner alleges that the Chief Special Master is engaging in a sort of retribution against Gardasil petitioners because they have filed claims against Gardasil's manufacturer, Merck, Sharpe & Dohme, in district court. ECF No. 33 at 2. According to Petitioner, "[t]hat

6

litigation is ongoing, and the Chief Special Master has made it abundantly clear that he does not like it." *Id.* Petitioner contends that the Chief Special Master's bias, or apparent bias, is demonstrated by his "orchestrated move" of reassigning all pending Gardasil cases to himself and then refusing to act on the pending motions. *Id.* Petitioner made these same arguments to Judge Lettow, who rejected them because "[g]enerally, 'judicial rulings, routine trial administration efforts, and ordinary admonishments' to counsel are not grounds for recusal." *Fetters*, 2023 WL 3597513 at *4 (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)). The same holds true here. And, as Judge Lettow recognized, Petitioner's allegations that the Chief Special Master is refusing to resolve motions for attorney's fees or Gardasil claims fails to establish the appearance of bias because of "the general backlog of vaccine petitions and, more specifically, the number of fee requests pending before the Chief Special Master. *Id.* at *9; *see also id.* at *9 n.4 (discussing the number of vaccine injury claims filed and resolved in recent fiscal years). Again, the same is true here.

*Fourth*, Petitioner complains that the Chief Special Master stated in another case that:

> Although I have found that a fees award is appropriate herein, I also find, in the reasonable exercise of my discretion under the circumstances, that the overall *magnitude* of the award should be more modest than what has been requested. For even if petitioners may legitimately pass through the Program en route to the "promised land" of another forum in which they hope to receive a favorable determination, I am not compelled by the Act to turn a blind eye to this stratagem – especially since it is highly likely (if not a certainty) that this claim, as well as the other comparable claims being dismissed, would have resulted in an unfavorable determination *had it been litigated fully in the Vaccine Program*. Claims alleging injuries of this nature after receipt of the HPV vaccine have not resulted in damages awards.
>
> Because of the above, a request for more than $15,000.00 for attorney's fees and costs is excessive in the context of a case that lasted less than nine months and was never intended to be litigated herein. As a result, I will rely on my authority to make reasonable percentage reductions in fees in appropriate cases.

*Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757, at *13 (Fed. Cl. Oct. 18, 2022) (emphasis in original). Again, as Judge Lettow found, this merely reflects the Chief Special Master's decision to take the strength of a petitioner's claim into consideration when deciding motions for fees, which he has the discretion to do. *Fetters*, 2023 WL 3597513 at *8. And "[a]s the Federal Circuit has recognized, special masters are 'entitled to use their prior experience in reviewing fee applications' and their determinations 'are entitled to deference.'" *Id.* (quoting *Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993)). There is no reason to depart from Judge Lettow's well-reasoned conclusion here.

*Fifth*, Petitioner also seems to believe that the Chief Special Master must be biased because Gardasil's manufacturer, Merck, Sharpe & Dohme, has never asserted in any of the district court proceedings "that allegations of injury after Gardasil were frivolously brought by these Plaintiffs." ECF No. 33 at 5. The relevance of this is difficult to discern. Certainly, a claim can fail without being frivolous. And, as explained in the next section, the denial of fees in this case was based on the Petitioner's refusal to comply with the Vaccine Act's documentation requirements; it was not based on the claim being frivolous. Whatever the relevance, Merck's litigation position falls well short of establishing bias sufficient to justify the Chief Special Master's disqualification.

*Finally*, Petitioner alleges that the Chief Special Master is biased because he refused to waive the statutory documentation requirement for the Gardasil petitioners. Petitioner's counsel contends that he proposed to "streamline" the Gardasil cases, in part, by having the OSM waive the requirement that petitioners file "medical records or affidavits." ECF No. 34-1 at 4.[5] Petitioner complains that the Chief Special Master refused to accept her proposal without offering another streamlined approach. Instead, the Chief Special Master required Gardasil petitioners to file the medical records the Vaccine Act required. ECF No. 33 at 7. This apparently shows bias, according to Petitioner, because the Chief Special Master required Gardasil petitioners to file medical records and affidavits, which she claims to have done, and perform full due diligence only to have the Chief Special Master refuse to decide Gardasil cases on the facts of each case. *Id.* at 8-9.

As explained above, the argument that the Chief Special Master does not decide cases based on the facts of the case is belied by his decisions and those of this Court affirming those decisions. More importantly, the Court fails to see how it is objective evidence of bias for the Chief Special Master to require Gardasil petitioners to comply with Vaccine Act's documentation requirements. The Vaccine Act *requires* that petitioners, including Gardasil petitioners, file various documentation—*e.g.*, various medical records and the "vaccination records associated with the vaccine allegedly causing the injury," 42 U.S.C. § 300aa-11(c)(2)— in every case unless they are unavailable, in which case the petitioner must explain their unavailability and what has been done to get them. And it is not clear that the Chief Special Master or this Court *could* waive these congressional requirements because the Vaccine Act states that each petitioner "*shall* contain" these records. *Id.* § 300aa-11(c) (emphasis added).[6] Thus, the fact that the Chief Special Master did not agree to allow Gardasil petitioners to circumvent the Vaccine Act does not demonstrate bias. To the contrary, it demonstrates that he properly applied the law.

Taken individually or together, Petitioner's arguments do not meet her heavy burden of demonstrating bias on the part of the Chief Special Master that would justify his disqualification

---

[5] Because this exhibit is not consecutively paginated, the Court cites to the ECF Header's pagination.

[6] The Court discusses these requirements at length in the discussion of Petitioner's motion for review, which, in effect, seeks to have this Court impose Petitioner's "streamlining" approach on the Office of Special Masters.

from this case or any other.  *See Fetters*, 2023 WL 3597513 at *10 (denying similar motion to disqualify the Chief Special Master from all pending and future Gardasil cases).

## III.   The Chief Special Master did not abuse his discretion by denying attorney's fees in this case.

### A.   Legal Standard

This Court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law."  42 U.S.C. § 300aa-12(e)(2)(B).  Special masters award "reasonable attorneys' fees" and "other costs" if they "determine[] that the petition was *brought in good faith* and there was a *reasonable basis* for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1) (emphasis added).  But "even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees." *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) (citing *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012)).  The Court therefore reviews a special master's award or denial of reasonable attorney's fees and costs for abuse of discretion.  *Masias v. Sec'y of Health & Hum. Servs.*, 634 F.3d 1283, 1288 (Fed. Cir. 2011) (citing *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10).

"[T]his court owes 'great deference' to the fact-findings and fact-based conclusions of the special master."  *Chuisano v. United States*, 116 Fed. Cl. 276, 284 (2014) (citing *Munn*, 970 F.2d at 870; *see also id.* ("[I]t is 'extremely difficult' to establish the 'reversible error' necessary to disturb a special master's decision on fees.") (citing *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 405 (2012)).  "In the context of Vaccine Act cases, an abuse of discretion generally does not occur when a Special Master 'considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his finding . . . .'"  *Graham v. Sec'y of Dep't of Health & Human Servs.*, 124 Fed. Cl. 574 (citing *Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993)).  However, the Court of Federal Claims will find that a Special Master abused discretion if the Special Master's decision to award or deny attorney's fees was "(1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based his decision."  *Chuisano*, 116 Fed. Cl. at 284 (citing *Murphy v. Sec'y of Health & Hum. Servs.*, 30 Fed. Cl. 60, 61 (1993)).

The special master's reasonable basis analysis is "limited to objective evidence," meaning the special master is not to consider "subjective considerations, such as counsel's subjective views on the adequacy of a complaint."  *James-Cornelius*, 984 F.3d at 1379 (citing *Cottingham on Behalf of K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (2020)).  "[T]he quantum of objective evidence needed to establish reasonable basis for a claim, including causation, is 'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'"  *Id.* (citing *Cottingham*, 971 F.3d at 1346).

### B.   Discussion

Petitioner challenges the Chief Special Master's denial of attorney's fees because she contends that her affidavit and certain medical records are sufficient to provide objective evidence of J.L.'s vaccination. While Petitioner argues at some length about Court rules and a few cases, she wholly ignores the Vaccine Act, under which her claim arises (as well as requirements of the Court's Rules). That statute lays bare the flaws in her argument—and the reasonableness of the Chief Special Master's decision.

The Chief Special Master concluded that Petitioner had a good faith basis to bring her claim but lacked a reasonable basis to do so. ECF No. 28 at 2. A major consideration for the Chief Special Master's finding that Petitioner lacked a reasonable basis was her failure to provide the vaccination records for J.L.'s Gardasil vaccinations that allegedly caused his claimed injury. *Id.* at 3. According to Petitioner, "the Chief Special Master failed to consider sworn affidavit testimony and submitted medical records in his analysis." ECF No. 30 at 2. Specifically, Petitioner complains that "[t]he Chief Special Master's sole basis for finding a lack of reasonable basis is that Petitioner failed to submit a vaccination record," and that "[t]he Chief Special Master ignored the affidavit testimony of Ms. Juliette Levy as well as medical records as corroborating evidence in support of Petitioner's reasonable basis claim." *Id.* at 4. Finally, according to Petitioner, "[t]his is a fictitious requirement established by the Chief Special Master for an excuse to deny fees in the instant case." ECF No. 30 at 8.

It is telling that Petitioner then goes on to argue only under this Court's Rules and ignores the Vaccine Act entirely other than to assert that "the relevant statutory authorities [do not] require a petitioner to submit a 'vaccination record,' whatever that means." ECF No. 30 at 8. But Petitioner's confusion is hard to accept given that the Vaccine Act clearly *requires* each petitioner to provide the "vaccination records"—Congress used that exact term—for the vaccination alleged to have caused the injury, or an affidavit explaining why those records are not attached to the petition. 42 U.S.C. § 300aa-11(c). Given how clear the Vaccine Act's and Vaccine Rule 2's documentation requirements are, and the fact that Petitioner's counsel has filed more than 600 vaccine injury cases in this Court, this feigned ignorance of what a "vaccination record" is calls into question the good faith basis for bringing this motion.[7]

In fact, the Vaccine Act could not be any clearer. Under it, a petition "*shall* contain . . . an affidavit, *and supporting documentation*, demonstrating that the person who suffered such injury or who died--(A) received a vaccine set forth in the Vaccine Injury Table . . . ." 42 U.S.C. § 300aa-11(c)(1) (emphasis added). And the Vaccine Act goes even further. It requires the petition to include the "*vaccination records* associated with the vaccine allegedly causing the injury." *Id.* § 300aa-11(c)(2) (emphasis added). Of course, "[t]he use of the word 'shall' means what follows is mandatory, not discretionary." *Norman v. United States*, 942 F.3d 1111, 1117 (Fed. Cir. 2019) (citation omitted). Thus, Congress clearly required Petitioner to include the vaccination records for J.L.'s Gardasil vaccination alleged to have caused his injuries.

---

[7] Petitioner's two motions are also somewhat contradictory. In the disqualification motion, Petitioner insists that she provided the medical records the Vaccine Act requires her to include with her petition. But here she ignores the Vaccine Act altogether and insists that the Chief Special Master simply made up a requirement to provide vaccination records out of thin air (apparently a result of his purported bias).

Recognizing that medical records may become unavailable, however, Congress included an exception to the documentation requirement.  If any of the required records, including vaccination records, are unavailable to Petitioner, she *must* identify all unavailable records and explain "the reasons for their unavailability." 42 U.S.C. § 300aa-11(c)(3); *Gomez v. Sec'y of Health & Hum. Servs.*, No. 17-1800V, 2019 WL 7480769, at *5 (Fed. Cl. Dec. 6, 2019). Vaccine Rule 2 goes even further, requiring that if any records are unavailable, the Petitioner "*must* include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability."  Vaccine Rule 2(c)(2)(B)(i) (emphasis added).  Petitioner ignores this requirement entirely.  She never addresses the absence of J.L.'s  vaccination records nor provides any explanation for their unavailability other than to insist they are not necessary.  But Congress's use of "shall" and Vaccine Rule 2's use of "must" make clear that these are not mere suggestions; rather, they are requirements.  Petitioner's steadfast refusal to comply with these basic documentation requirements undermines her reasonable basis to bring her claim.  In the end, Petitioner's argument that neither the Vaccine Act nor this Court's Rules required her to include J.L.'s Gardasil vaccination records fails to comport with the plain text of the Vaccine Act and Vaccine Rule 2.

And Congress's documentation requirement makes a lot of sense.  Congress requires that any health care provider that administers a covered vaccine shall ensure that the administration of the vaccine is recorded in the recipient's "permanent medical record (or in a permanent office log or file to which a legal representative shall have access upon request) . . . ." 42 U.S.C. § 300aa-25(a).  Again, this is not a discretionary provision.  Under Congress's statutory scheme, therefore, the proof of a vaccination should be readily available in Petitioner's medical records and provide reliable evidence of the vaccination.  Congress thus made clear that the vaccination record is the best evidence of the administration of a vaccination alleged to have caused injury and required Petitioner to include that evidence or a cogent explanation for its unavailability. Providing neither is not an option Congress allows.

These proceedings also bely Petitioner's argument that the Chief Special Master made up the requirement to provide vaccination records.  Not only is it clear that Congress, not the Chief Special Master, imposed the requirement for the Petitioner to provide vaccination records or explain their unavailability, but the Government specifically briefed the issue to the Chief Special Master in response to the Petitioner's motion for attorney's fees.  ECF No. 20 at 10. Indeed, several early orders made clear the requirement to provide J.L.'s vaccination records. *E.g.*, ECF Nos. 5 & 12.  Indeed, this Court's website contains "Guidelines for Practice Under the National Vaccine Injury Compensation Program" (Apr. 24, 2020), which include five pages explaining the documents a petitioner must file.  *See* http://www.uscfc.uscourts.gov/sites/default/files/Guidelines-4.24.2020.pdf at 14-18.  This includes the vaccination records that Petitioner must file.  *Id*. at 15.  They also explain what to do when those records are unavailable.  *Id*. at 18.

Put simply, the statutory requirement for vaccination records has been clear to all involved since well before the Chief Special Master denied fees in this case.  Petitioner, however, chose not to reply to the Government's argument to the Chief Special Master at all, much less take the opportunity to provide the missing vaccination records or explain their absence from this case.  ECF No. 28 at 3.  Similarly, Petitioner has chosen to ignore the Vaccine Act and Vaccine Rule 2(c)(2)(B)(i) before this Court.  But Petitioner's choice to ignore a

statutory requirement that is reiterated in the Court's Rules does not impose a duty on the Chief Special Master or this Court to do so as well.

Petitioner's reliance on her affidavit also fails to remedy the deficiency in her petition. According to Petitioner, her affidavit testimony that J.L. received two doses of the Gardasil vaccine satisfies the Court's Rules (again without considering the statutory requirements) because Vaccine Rule 2(c)(2)(B)(ii) allows her to "support[] all elements of the allegations made in the petition" with an affidavit. ECF No. 30 at 8. As an initial matter, this Court's Rules cannot displace a contrary statutory requirement like those found in 42 U.S.C. § 300aa-11(c). Therefore, Petitioner would still have to comply with the statutory direction. But, of course, this Court's Rules do not contradict the Vaccine Act because Vaccine Rule 2(c)(2)(B)(i) *requires* the Petitioner to explain why J.L.'s vaccination records are unavailable and what she has done to try to get them. Petitioner's steadfast refusal to explain the absence of the required medical records supports the Chief Special Master's conclusion that Petitioner has failed to establish the vaccination alleged to have caused J.L.'s injuries.

While her affidavit is silent about why J.L.'s vaccination records are unavailable, Petitioner's reply argues that she withdrew from the program before receiving J.L.s' medical records from his treating pediatrician, which, presumably, would have included the missing vaccination records. ECF No. 30 at 9. First, this is not the affidavit testimony that Congress and Vaccine Rule 2 require. *See, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.") (citations omitted). Second, withdrawing from the program before J.L.'s doctor provides the records does not equate to unavailability. Finally, and most importantly, this argument contradicts the prior certification that "Petitioner's counsel has received medical records from all outstanding medical providers and has filed all known records. The undersigned hereby certifies that all relevant medical records have been received and filed of record in this case." ECF No. 13 at 1 (internal citation omitted). And Petitioner further represented that "[a]ll historical medical records have been filed" and the only remaining records would be for ongoing treatment that counsel would file as they arose. *Id*. at 1 n.1. Petitioner made these representations on April 21, 2021. ECF No. 13. Petitioner did not file her notice of intent to withdraw from the Vaccine Injury Compensation Program until September 3, 2021. ECF No. 15. Of course, the prior statement that Petitioner had filed all known medical records and the current argument that Petitioner did not file the vaccination records because she withdrew from the program before receiving them cannot both be true. Whatever the reason, Petitioner's reply fails to establish a reasonable basis.

Nor does Petitioner's reliance on precedent save her motion for attorney's fees because none of the cases she relies upon support her position that she need not provide vaccination records or an explanation for their absence. Objective affidavit testimony may be filed in support of reasonable basis. This is not in dispute. But none of the cases Petitioner relies upon holds, or even implies, that a petitioner can ignore 42 U.S.C. § 300aa-11(c)(3)'s and Vaccine Rule 2(c)(2)(B)(i)'s requirements to include in an affidavit an explanation of why vaccination records are unavailable and what Petitioner has done to try to get them.

For example, while the Federal Circuit held in *James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374 (Fed. Cir. 2021), that affidavit testimony may provide objective evidence of vaccination, *James-Cornelius* does not hold that a petitioner does

not have to explain missing vaccination records. Petitioner also relies upon the Chief Special Master's decision in another case that "[a] petitioner can overcome the lack of direct proof of a vaccine having been administered by marshaling a variety of circumstantial evidence tending to establish that he did in fact receive the alleged vaccine." ECF No. 30 at 6 (quoting *Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *8 (Fed. Cl. Spec. Mstr. June 26, 2015) (emphasis omitted)). *Livingston* does not help Petitioner here, however, because the very next paragraph makes clear that Mr. Livingston provided his child's vaccination ledger, which did not record the vaccination he claimed his child had gotten. The Chief Special Master went on to discuss the "variety of circumstantial evidence" that could have allowed Mr. Livingston to overcome the absence of documentation. *Livingston*, 2015 WL 4397705 at *8. Because the petitioner in *Livingston* was unable to provide such evidence, the Chief Special Master found he lacked a reasonable basis because he could not prove the receipt of the alleged vaccination. *Id*. Thus, *Livingston* supports the Chief Special Master's decision here because Petitioner has not satisfied Congress's documentation requirements.

The same is true of Petitioner's reliance on *Gambo v. Sec'y of Health & Hum. Servs.*, No. 13-691V, 2014 WL 7739572 (Fed. Cl. Spec. Mstr. Dec. 18, 2014). In *Gambo*, the petitioner, who was the spouse of the deceased vaccinee, was unable to locate the vaccination records the Vaccine Act required. *Id*. at *1. Because he was unable to locate the vaccination records, he resorted to circumstantial evidence, which included his own affidavit and statements from two doctors, one of whom stated that she had seen the vaccination record in the past but was unable to locate it any longer. *Id*. at *2. *Gambo* is easily distinguishable because there the petitioner and medical professionals explained the absence of the contemporaneous vaccination record and provided evidence to establish the administration of the vaccine at issue in that case. Here, Petitioner fails to provide any explanation for the missing records.

And the same is also true of *Smith v. Sec'y of Health & Hum. Servs.*, No. 14-982V, 2017 WL 2927419 (Fed. Cl. Spec. Mstr. June 2, 2017). There, the petitioner claimed to have gotten an influenza vaccine from her employer but was unable to obtain the vaccination record. *Id*. at *1 ("To date, however, Petitioner has been unable to locate documentary proof of vaccination . . . ."); *see also id*. at *2 ("Despite repeatedly contacting Pilgrim's Pride directly, Petitioner has been unable to obtain direct proof of the date that Pilgrim's Pride provided the vaccine, or if Ms. Smith received the vaccine, as the nurse who administered the vaccine retired and could not be located for a statement."). Therefore, she sought to bolster her claim with circumstantial evidence of vaccination. This included affidavits from the petitioner in that case and a coworker, statements from family members, and a statement from the petitioner's employer identifying the lot number of the vaccine it administered to employees. *Id*. at *2. But *Smith* does not stand for the proposition that a petitioner does not need to explain the absence of vaccine records. In fact, *Smith* does quite the opposite—it only gets to the circumstantial evidence because the petitioner explained the absence of the vaccination record as required by 42 U.S.C. § 300aa-11(c)(3) and Vaccine Rule 2(c)(2)(B)(i). Thus, *Smith* also supports what the Chief Special Master required here.

Finally, Petitioner insists that it was an abuse of discretion for the Chief Special Master to ignore the objective evidence of vaccination in Petitioner's affidavit and medical records. ECF No. 30 at 9-10. Again, as explained above, neither Petitioner's affidavit nor medical records explain why J.L.'s vaccination records are unavailable. On that basis, it was not an abuse of

discretion to deny fees for failing to comply with Congress's documentation requirements. Even if compliance with the Vaccine Act was not mandatory (it was), Petitioner's affidavit only states that J.L. received two doses of Gardasil, one "on October 10, 2017 and the second dose in April 2018." ECF No. 1-2 ¶ 3. Of course, "The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). And the medical records Petitioner did provide state only that Petitioner told the medical providers that J.L. received the two doses of Gardasil. For example, one record states that J.L.'s second Gardasil vaccination ("HPV #2") was "verified by mom." ECF No. 6-3 at 33. Similarly, another doctor noted that Petitioner "recall[ed] that [J.L.] received the second HPV vaccine on 4/12/18." ECF No. 6-3 at 40. One other note indicated that the doctor would consider whether J.L.'s symptoms were due to the Gardasil vaccination because they began nine days after administration. ECF No. 6-3 at 37. If this was based on anything other than Petitioner's reporting to the doctor, *e.g.*, a vaccination or other medical record, it is not apparent and no other record is attached. In the end, this evidence is akin to the evidence Petitioner's counsel provided in *Fetters*, which Judge Lettow found insufficient because "[w]hile these statements were made in medical records, all statements regarding whether [J.L.] received the vaccine were made by [Mrs. Levy]." *Fetters*, 2023 WL 3597513 at *6.

Congress determined what evidence is required to prove the receipt of a covered vaccination so one can bring a claim under the Vaccine Act. Petitioner's refusal to comply with that requirement was her choice. But that choice had consequences. The Chief Special Master's conclusion that Petitioner lacked a reasonable basis to bring her claim when she refused to comply with Congress's minimal documentation requirements was not an abuse of discretion.[8] *See James-Cornelius*, 984 f.3d at 1379 ("[E]ven when these two requirements [to bring the action in good faith and with a reasonable basis] are satisfied, a special master retains discretion to grant or deny attorneys' fees.") (citations omitted).

## IV.  Conclusion

For reasons stated above, the Court DENIES Petitioner's Motion for Disqualification, ECF No. 33, and her Motion for Review, ECF No. 29. The Chief Special Master's decision denying Petitioner's motion for attorney's fees is AFFIRMED. The Clerk's Office shall enter judgment accordingly.

**IT IS SO ORDERED.**

---

[8] The Government also argues that Petitioner's failure to provide anything supporting causation justified the Chief Special Master's finding that she lacked a reasonable basis to bring her claim. ECF No. 35 at 17-19. It is true that Petitioner did not submit anything regarding causation until after the Chief Special Master entered his order concluding the proceedings. *See* ECF Nos. 16 (Order concluding proceedings), 17 (Petitioner's notice of filing medical literature), & 25 (Petitioner's notice of filing medical literature). Because the Chief Special Master did not reach this issue, the Court does not either.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge